Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:      516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EURYS GAMEZ, <br><br> Plaintiff, <br><br> vs. <br><br> SOC TELEMED, INC., STEVEN J. SHULMAN, JOSEPH P. GRESKOVIAK, CHRIS GALLAGHER, BARBARA P. BYRNE, THOMAS J. CARELLA, GYASI C. CHISLEY, AMR KRONFOL, AND ANNE M. MCGEORGE, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Eurys Gamez ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against SOC Telemed, Inc. ("SOC Telemed" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Patient Square Capital, through merger vehicle Spark Merger Sub, Inc.. ("Merger Sub" and collectively with Parent, "Patient Square Capital") as a result

of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a February 3, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Patient Square Capital will acquire all the outstanding shares of SOC Telemed common stock for $3.00 per share in cash. As a result, SOC Telemed will become an indirect wholly-owned subsidiary of Patient Square Capital.

3.     Thereafter, on February 23, 2022, SOC Telemed filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly it does not appear that a committee composed of independent and disinterested directors was created to run the sales process.

5.     In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.     Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all

Company equity awards for the merger consideration.

7.     In violation of the Exchange Act Defendants caused to be filed the materially deficient Preliminary Proxy Statement on February 23, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for SOC Telemed, provided by SOC Telemed management to the Board and the Board's financial advisors William Blair & Company, L.L.C. ("William Blair"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by William Blair if any, and provide to the Company and the Board.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.     Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a SOC Telemed stockholder.

10.     Defendant SOC Telemed is a nationwide leader in the ever-emerging field of acute telemedicine. SOC Telemed is incorporated in Delaware and has its principal place of business at 2411 Dulles Corner Park, Suite 475, Herndon, Virginia 20171.  Shares of SOC Telemed common stock are traded on the Nasdaq Stock Exchange under the symbol "TLMD".

11.     Defendant Steven J. Shulman ("Shulman") has been a Director of the Company at all relevant times.  In addition, Schulman serves as the Chairman of the Board of Directors.

12.     Defendant Joseph P. Greskoviak ("Greskoviak") has been a director of the Company at all relevant times. In addition, Greskoviak serves as the Vice Chairman of the Board of Directors.

13.     Defendant Chris Gallagher ("Gallagher") has been a director of the Company at all relevant times. In addition, Gallagher serves as the Company's Chief Executive Officer ("CEO") and President.

14.     Defendant Barbara P. Byrne ("Byrne") has been a director of the Company at all relevant times.

15.     Defendant Thomas J. Carella ("Carella") has been a director of the Company at all relevant times.

16.     Defendant Gyasi C. Chisley ("Chisley") has been a director of the Company at all relevant times.

17.     Defendant Amr Kronfol ("Kronfol") has been a director of the Company at all relevant times.

18.     Defendant Anne M. Mcgeorge ("Mcgeorge") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Patient Square Capital Patient Square Capital is a dedicated health care investment firm that partners with best-in-class management teams whose products, services and technologies improve health.

21.     Non-Party Merger Sub is a wholly owned subsidiary of Patient Square Capital created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

25.     SOC Telemed, Inc. provides acute care telemedicine services and technology to hospitals, health systems, physician groups, and government organizations in the United States. The company's technology platform, Telemed IQ, provides telemedicine programs. Its telemedicine solutions include teleNeurology, telePulmonology, telePsychiatry, and teleICU. The company was founded in 2004 and is based in Reston, Virginia.

26.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 12, 2021 press release announcing its 2022 Q3 financial results, the Company highlighted revenue of $26.7 million in the third quarter, an increase of 76% year over year. They further announced total system-wide consults of 140,743 during the third quarter an increase of 76% year over year.

27.     Speaking on the positive results, CEO Defendant Gallagher said, "We are proud of our third quarter results as the new organization came together with renewed focus resulting in the highest quarterly revenue and bookings in our company's history…" Gallagher continued: "Our

recently announced restructuring helps position the Company to continue to lead the industry, effectively service our clients and grow in line with our sales momentum. The cost reductions recognized as part of the restructuring will allow us to invest in areas known to be important to our market position and growth."

28.      The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by SOC Telemed. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

29.      Despite this upward trajectory, the Individual Defendants have caused SOC Telemed to enter into the Proposed Transaction without providing requisite information to SOC Telemed stockholders such as Plaintiff.

***The Flawed Sales Process***

30.      As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

31.      Notably, while the Preliminary Proxy Statement indicates that a "Strategic Transaction Committee" was created to run the sales process, it is revealed that this committee was not composed solely of independent and disinterested directors, as at least two Company insiders sat on the committee, including Company CEO Defendant Gallagher who owns approximately 3.7% of the Company's outstanding stock and Defendant Schulman, who owns approximately 1.8% of the Company's outstanding stock.

32.      Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Patient Square Capital, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions

contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On February 3, 2022, SOC Telemed and Patient Square Capital issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **HERNDON, Va., Feb. 3, 2022** /PRNewswire/ -- SOC Telemed, Inc. (NASDAQ: TLMD) (the "Company" or "SOC Telemed"), the largest national provider of acute care telemedicine, today announced that it has entered into a definitive agreement to be acquired by Patient Square Capital ("Patient Square"), the leading dedicated health care investment firm.
>
> Under the terms of the agreement, SOC Telemed stockholders will receive $3.00 in cash per share of Class A common stock ("the common stock"). The per share purchase price represents a premium of approximately 366.1% over SOC Telemed's closing share price on February 2, 2022, the last full trading day prior to the transaction announcement and a 93.1% premium to SOC Telemed's sixty-day volume-weighted average price (VWAP) through February 2, 2022.
>
> The Board of Directors of SOC Telemed (the "Board"), having determined that the transaction is in the best interests of the Company's stockholders, has unanimously approved the transaction and recommends that Company stockholders approve the transaction and adopt the merger agreement at the Special Meeting of Stockholders to be called in connection with the transaction. Stockholders collectively holding approximately 39% of the outstanding shares of common stock have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of the Company's common stock in favor of the transaction.
>
> Steve Shulman, Chairman of the SOC Telemed Board of Directors, said, "Patient Square Capital's acquisition of SOC Telemed, which is the culmination of a comprehensive process, represents a compelling opportunity for all stakeholders. After being approached by Patient Square Capital, we formed an independent committee of the Board, which thoroughly reviewed the proposal with the assistance of independent financial and legal advisors. Following the independent committee's unanimous recommendation, the Board unanimously determined that the all-cash offer unlocks maximum value to stockholders, and that the experience and resources of Patient Square Capital would best position the Company for growth in the years to come. Lastly, today's announcement is a testament to the hard work of the SOC Telemed team, which worked tirelessly to achieve an optimal outcome for our stakeholders."

Upon completion of the transaction, SOC Telemed will become a private company with the flexibility and resources to continue investing in its clinical capabilities, innovating its offering and expanding its footprint.

Following the completion of the transaction, SOC Telemed will continue to be led by Dr. Chris Gallagher, Chief Executive Officer, who assumed the role of CEO in September of 2021. Dr. Gallagher was previously Co-Founder and CEO of Access Physicians, a high growth and experienced multi-specialty acute care telemedicine business that was acquired by SOC Telemed in March of 2021.

"Today's announcement validates SOC Telemed's market-leading technology-enabled clinical services platform for acute care telemedicine, which we have deployed across more than 1,000 facilities nationwide," said Dr. Gallagher. "The last several years have revealed the critical ways that technology can expand access to care, improve clinician efficiency, and enable more cost-effective care delivery. Achieving those goals will require focus, time and meaningful investment in the years to come. We believe that as a private company, with the expertise and support of the team at Patient Square Capital, SOC Telemed will be best positioned to meet the growing needs of patients, physicians and our hospital partners."

Patient Square Capital brings to SOC Telemed extensive and relevant experience with health systems and provider organizations. The Partners at Patient Square have spent years on the boards of directors of leading health care organizations, including: HCA, Duly Health and Care (formerly DuPage Medical Group), OB Hospitalist Group, Envision Healthcare, Summit BHC, Covenant Physician Partners and Access Physicians, among others.

"Having served on the board of Access Physicians prior to its acquisition by SOC Telemed, I had the opportunity to see first-hand the vital role that inpatient telemedicine can play in transforming clinical workflows, addressing clinician shortages, and enabling timely and high-quality patient care," said Karr Narula, Founding Partner of Patient Square.  "We look forward to partnering with Dr. Gallagher and the SOC Telemed team to invest meaningfully in the business to further accelerate growth and expand its offerings in the years to come."

### *Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicate that SOC Telemed insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of SOC Telemed.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name and Address of Beneficial Owner | Shares Beneficially Owned | |
| --- | --- | --- |
| | Number (#) | Percent (%) |
| *Greater than 5% Beneficial Owners:* | | |
| SOC Holdings LLC[1] | 33,874,965 | 33.5% |
| Entities associated with Millennium Management LLC[2] | 5,507,669 | 5.4% |
| *Named Executive Officers and Directors:* | | |
| Christopher M. Gallagher[3] | 3,717,922 | 3.7% |
| David R. Fletcher | — | * |
| R. Jason Hallock | — | * |
| Steven J. Shulman[4] | 1,786,940 | 1.8% |
| Dr. Bobbie Byrne | 12,440 | * |
| Thomas J. Carella[5] | 60,414 | * |
| Gyasi C. Chisley | — | * |
| Joseph P. Greskoviak | 12,440 | * |
| Amr Kronfol[6] | 71,147 | * |
| Anne M. McGeorge | 12,440 | * |
| *All executive officers and directors as a group (12 individuals)[7]* | 6,224,026 | 6.1% |

37.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Company Options (Vested) | Company Options (Unvested) | Company RSUs | Company PSUs | Aggregate Value[1] |
| --- | --- | --- | --- | --- | --- |
| *Executive Officers:* | | | | | |
| Christopher M. Gallagher | — | — | 1,080,000 | 240,000[2] | $ 3,960,000 |
| David R. Fletcher | — | — | — | — | — |
| R. Jason Hallock | — | — | 88,670[3] | —[4] | $ 266,010 |
| David Mikula | — | — | 450,000 | 100,000[5] | $ 1,650,000 |

| | | | | | |
|---|---|---|---|---|---|
| Eunice J. Kim | — | — | 66,502 | —(4) $ | 199,506 |
| **Directors:** | | | | | |
| Steven J. Shulman | — | — | 51,565 | — $ | 154,695 |
| Dr. Bobbie Byrne | — | — | 45,947 | — $ | 137,841 |
| Thomas J. Carella | 11,039(6) | 29,437(6) | 45,947 | — $ | 158,889 |
| Gyasi C. Chisley | — | — | 44,150 | — $ | 132,450 |
| Joseph P. Greskoviak | — | — | 66,745 | — $ | 200,235 |
| Amr Kronfol | 11,039(7) | 18,398(7) | 45,947 | — $ | 153,148 |
| Anne M. McGeorge | — | — | 45,947 | — $ | 137,841 |
| *All executive officers and directors as a group (12 individuals)* | 22,078 | 47,835 | 2,010,353 | 340,000 $ | 7,087,414 |

38.     Moreover, certain employment agreements with certain SOC Telemed executives, entitle such executives to severance packages should their employment be terminated under certain circumstances, however the Preliminary Proxy Statement fails to provide the specific amount of consideration that these payouts will entail.

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of SOC Telemed, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On February 23, 2022, the SOC Telemed Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.    Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.    Adequate and specific reasoning as to why the Strategic Transaction Committee was composed of at least 50% of directors who were not independent or disinterested;

    b.    Whether the confidentiality agreements entered into by the Company with Patient Square Capital differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    c.    All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Patient Square Capital, would fall away; and

    d.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning SOC Telemed's Financial*
*Projections*

43.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for SOC Telemed provided by SOC Telemed management to the Board and William Blair and relied upon by William Blair in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, William Blair reviewed, "certain internal business, operating and financial information and forecasts of the Company for the fiscal years ending December 31, 2022, through December 31, 2027, including certain estimates as to potentially realizable existing federal net operating loss carryforwards expected to be utilized by the Company."

45.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that SOC Telemed management provided to the Board and William Blair.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.     With regard to the *Management Forecasts* Projections prepared by SOC Telemed, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

> a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income (loss), interest, taxes, depreciation and amortization (including internal-use software), stock-based compensation, gain on contingent shares issuance liabilities, loss on puttable options, change in fair value of contingent consideration, and integration, acquisition, transaction and executive severance costs.

47.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the William Blair's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by William Blair*

50.    In the Preliminary Proxy Statement, William Blair describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.    With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.    The specific metrics for each compared company; and

      b.    The specific inputs and assumptions used to determine the reference multiples range of Enterprise Value/CY 2022E Revenue and Enterprise Value/CY 2023E Revenue.

52.    With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.    The specific metrics for each precedent transaction; and

     b.   The specific inputs and assumptions used to determine the reference multiples range of Enterprise Value/LTM Revenue.

53.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a.   The projected after tax unlevered free cash flows for years ending December 31, 2022 through December 31, 2026 utilized;

     b.   The specific terminal value for the Company calculated;

     c.   The specific inputs and assumption used to determine the terminal multiples range of 1.5x – 2.5x;

     d.   The specific inputs and assumptions used to determine the utilized illustrative discount rate range of 14.0% to 16.0%;

     e.   The utilized weighted average cost of capital for the Company;

     f.   The present value of the assumed terminal value of the Company;

     g.   The estimate of the Company's net debt as of December 31, 2021 utilized; and

     h.   The Company's total diluted shares outstanding as of December 31, 2021.

54.    With respect to the *Leveraged Buyout Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a.   The specific inputs and analysis used to determine the target range of annualized internal rates of return from 15.0% to 25.0% for a potential investor;

     b.   The specific inputs and analysis used to determine the range of debt financing of $0 to $100 million; and

     c.   The specific inputs and analysis used to determine the utilized range of CY 2027E revenue multiples of 1.5x to 2.5x.

55.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public SOC Telemed stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants

knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of SOC Telemed's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of SOC Telemed within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause SOC Telemed to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled SOC Telemed and all of its employees.  As alleged above, SOC Telemed is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 28, 2022                    **BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*